UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:16-cr-250 |
| -v- | ) | |
| | ) | HONORABLE PAUL L. MALONEY |
| Justin Michael Walling, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## OPINION AND ORDER DENYING MOTION TO SUPPRESS

This matter is before the Court on Defendant Justin Walling's motion to suppress evidence from the search warrant and statements during the search and for application of the exclusionary rule. (ECF No. 16.) A hearing was held on March 28, 2017 (ECF No. 23), and the Court directed the parties to file supplemental briefs, which have now been considered. (*See* ECF Nos. 25, 26.)

## I. BACKGROUND

On May 17, 2016, a search warrant was authorized by Magistrate Judge Ray Kent for the residence of Justin Walling, 822 Grindle Drive, Lowell, MI. The warrant authorized the search and seizure of all "property, evidence, fruits, and instrumentalities of 18 U.S.C. § 2422(b) (coercion and enticement of a minor) and 1470 (transfer of obscene material to minors," (ECF No. 21-1 at PageID.159), along with evidence of the receipt or distribution of child pornography (18 U.S.C. § 2252A). (*Id.* at Page ID.119–20, 156-59.)

The warrant was sought by Deputy Sheriff Phillip Hesche, (*id.* at PageID.117), who's assertions in his affidavit regarding child pornography are most relevant to this motion.

1

In his affidavit, Deputy Hesche, an officer with ten years of experience asserted: "There is probable cause to believe that a person using the Internet at 822 Grindle Drive, Lowell MI is a collector of child pornography based on the number of requests made to a presumably 14 year old minor child for photograph, as well as having graphically sexual conversation with an investigator working under the cover of the aforementioned 14 year old child." (*Id.* at PageID.146.) Deputy Hesche further concluded that "[t]here is probable cause to believe that an individual using the Internet service registered to address 822 Grindle Drive, Lowell, MI is a child pornography collector using Facebook Messenger, KiK Messneger, and other similar chat services to trade or solicit child pornography. Such activity is indicative that a user of the Internet service registered to address 822 Grindle Drive, Lowell, MI, fits the characteristics of a collector of child pornography." (*Id.* at PageID.148.)

Hesche based his conclusions on a series of very troubling, sexually graphic conversations where Justin Walling, who advertised himself as "Justin Blade," solicited pictures and conversation with an undercover detective who he assumed was fourteen-year-old girl; in one conversation, Walling admitted to having sexual contact with ten girls under the age of 18. (ECF No. 21-1 at PageID.142.) In addition, Walling, a convicted sex offender, had been convicted of multiple counts of criminal sexual conduct and possession of child sexually abusive materials. (*Id.* at PageID.143–44.)

For his part, Walling essentially argues that Hesche bootstrapped those conversations—perhaps otherwise probable cause for coercion or enticement—to justify a fishing expedition for child pornography. As the Sixth Circuit once described a similar case: the warrant "established probable cause for one crime (child molestation) but designed and

2

requested a search for evidence of an entirely different crime (child pornography)," and thus, "the warrant did not authorize the search." *United States v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008). The United States avers that *Hodson* is distinguishable because here there was independent probable cause for at least child coercion and enticement. The parties then disagree about whether severance saves the warrant.

## II.     GENERAL LEGAL FRAMEWORK

The Fourth Amendment requires search warrants be issued only upon probable cause. U.S. Const. amend IV; *Dalia v. United States*, 441 U.S. 238, 255 (1979); *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005). Probable cause is a "fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 223 (1983). Probable cause exists when, under the totality of circumstances, there is a fair probability evidence of a crime will be found in a particular place. *Gates*, 462 U.S. at 238; *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991); *see also Laughton*, 409 F.3d at 747 (explaining there must be a nexus between the place to be searched and the evidence sought) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)).

A magistrate's determination of probable cause should be afforded great deference by a reviewing court. *United States v. Leon*, 468 U.S. 897, 914 (1984); *Gates*, 462 U.S. at 236; *Greene*, 250 F.3d at 478. The proper standard of review for the sufficiency of an affidavit is whether the magistrate had a "substantial basis "for finding the affidavit established probable cause "to believe that the evidence would be found at the place cited." *Leon*, 468

U.S. at 915 (quoting *Gates*, 462 U.S. at 239); *Greene*, 250 F.3d at 478 (quoting *Davidson*, 936 F.2d at 859). Because magistrates issue warrants under a totality-of-the-circumstances approach, reviewing courts should avoid scrutinizing the supporting affidavit line-by-line. *Gates*, 462 U.S. at 246 n. 14; *Greene*, 250 F.3d at 479. The decision should only be overturned if the magistrate exercised his or her discretion arbitrarily. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).

A court reviewing the sufficiency of the evidence supporting a finding of probable cause is limited to the information presented in the four corners of the affidavit. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971)). Reviewing courts should examine the affidavit supporting the application for a search warrant in a common sense, rather than a "hypertechnical," manner. *Gates*, 462 U.S. at 236 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *Greene*, 250 F.3d at 479.

Further, even if a search warrant lacked probable cause, the exclusionary rule will not be used to exclude all evidence found in that search if the officers relied in "good faith" on the magistrate's issuance of the warrant. *Leon*, 468 U.S. at 913, 920.

A defendant who seeks to suppress evidence secured with a search warrant bears the burden of proof to show that such evidence should be excluded. *United States v. Feldman*, 606 F.2d 673 (6th Cir. 1979).

III.    ANALYSIS

A.    Probable Cause

a.    *Sufficient probable cause existed to support the search warrant as to coercion and enticement of a minor (18 U.S.C. § 2422(b)) and transfer of obscene material to minors (18 U.S.C. § 1470).*

Ample evidence in the warrant supported probable cause to search at least some items as to alleged coercion and enticement and transfer of obscene material to minors. Defendant had sexually graphic conversations with a presumably fourteen-year-old girl, talked about having sexual contact with her (and other minor girls), and sought to coerce or entice her for sex. Moreover, Defendant indisputably sent a picture of his penis to the presumably fourteen-year-old girl. The affidavit established the necessary nexus between the conversation and image and Justin Walling, and the affidavit established Walling's devices at his residence as the origin of those conversations.

The search warrant affidavit states that the items listed "will be searched and seized to locate property, evidence, fruits, and instrumentalities of 18 U.S.C. §§ 2422(b) (coercion and enticement of a minor) and 1470 (transfer of obscene materials to minors)." (ECF No. 21-1 at PageID.159.)[1] This distinguishes this case from *United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008), because in that case, the affidavit "established probable cause to search for

---

[1] Notably, both the application for a search warrant itself and the conclusion in the continuation only list "coercion and enticement of a minor" and "transfer of obscene materials to minors," and not "receipt or distribution of child pornography." (*See* ECF No. 19 at PageID.57, 100.) It's unclear to the Court if the deputy who signed the affidavit meant to include the statements about probable cause as to child pornography and neglected to mention child pornography in the application and conclusion, or if this affidavit reflected a sloppy attempt at using a search warrant template for child pornography. Regardless, it matters not, as the Court must evaluate the search warrant in its entirety, and the warrant asserts that probable cause existed as to child pornography. (*See, e.g.,* ECF No. 19 at PageID.93.)

evidence of *one crime* (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography)." *Id.* at 289 (emphasis added). By contrast, the affidavit in this case established probable cause to search for evidence of two crimes but designed and requested a search for evidence of three crimes, as the Court will discuss in more detail below.

Thus, the Court finds, contrary to Defendant's arguments on this point, ample probable cause existed to search the residence for evidence of "coercion and enticement of a minor" and "transfer of obscene materials to minors."

   b. *Sufficient probable cause did <u>not</u> exist to support the search warrant as to receipt or distribution of child pornography (18 U.S.C. § 2252A).*

On balance, the information contained in the "four corners of the affidavit" does not support that the magistrate judge had a substantial basis to conclude[2] probable cause existed to search for evidence of *child pornography* under the totality of the circumstances.

The factual circumstances that gave rise to the search warrant for child pornography here closely resemble those in *Hodson,* even though *Hodson* is ultimately distinguishable.

Here, similar to *Hodson,* the defendant engaged in inappropriate and sexually graphic conversations with who he assumed to be a minor, shared information that suggested he had sexual contact with other minors, and solicited the minor for sex. Based on that sort of behavior, the officer felt probable cause existed to support a search for evidence of child pornography. As in *Hodson, no* independent *factual* evidence contained in the four corners

---

[2] *But cf. supra* note 1.

of this affidavit supported probable cause that evidence of a "collection of child pornography" was likely to be found in Walling's residence. (*See* ECF No. 19 at PageID.93.)

While two factual dissimilarities with *Hodson* warrant discussion, those dissimilarities do not meaningfully distinguish this case from the holding in *Hodson*—at least as it applies to the issue of probable cause and the warrant.

### 1.      *Affiant cited his experience to support probable cause.*

In *Hodson,* the detective "failed to offer the expertise necessary to establish a 'link between sexual deviance . . . and pornography possession." 543 F.3d at 291. The Court further noted, unlike the facts in *Adkins,* the officer's affidavit did not "include[] certain information from an FBI expert on crimes against children that demonstrated that, as a 'preferential offender,' the suspect was likely to pursue and collect child pornography." *Id.* at 294 n.4 (citing *United States v. Adkins,* 169 F. App'x 961, 964 (6th Cir. 2006)).

The best the United States comes to distinguishing this case from *Hodson* is a mechanical statement contained in the warrant under a sub-heading of "characteristics common to individuals with a sexual interest in children":

> Based upon my knowledge, experience and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the distribution, receipt, and collection of child pornography. There is probable cause to believe that a person using the Internet at 822 Grindle Drive, Lowell MI is a collector of child pornography based on the number of requests made to a presumably 14 year old minor child for photographs, as well as having graphically sexual conversation with an investigator working under the cover of the aforementioned 14 year old child.

(ECF No. 21-1 at PageID.146.)

However, the problem with this statement is twofold.

First, as an underlying factual matter, in the four corners of the affidavit, there was an isolated request for the child to send a "fully clothed" picture, not a "number of requests" made for pornographic images. That isolated request neither supports the assertion made nor advances the case for probable cause by very much at all.

Second, to support his conclusory statement, while the officer provides what he believes to be "characteristics common to people involved in Internet child pornography," the affidavit is barren that the defendant shared any of these characteristics. Indeed, the one category in which Walling clearly shares to those who collect child pornography—having "a sexual interest in children"—is tautologically obvious. Presumably all persons who collect child pornography have a sexual interest in children, but that does not make the reverse true.

Then-Judge Sotomayor remarked in a similar case: "It is an inferential fallacy of ancient standing to conclude that, because members of group A (those who collect child pornography) are likely to be members of group B (those attracted to children), then group B is entirely, or even largely composed of, members of group A." *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008). "Although offenses relating to child pornography and sexual abuse of minors both involve the exploitation of children, that does not compel, or even suggest, the correlation drawn by the district court," she continued; "[p]erhaps it is true that all or most people who are attracted to minors collect child pornography. But that association is nowhere stated or supported in the affidavit." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (probable cause assessments are to be made from "all the circumstances set forth in the affidavit") and *United States v. Gourde*, 440 F.3d 1065, 1067 (2d Cir. 2008) ("All data

necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath.")).

"An officer seeking a warrant must produce adequate *supporting facts* about the underlying circumstances to show that probable cause exists to support the particular search requested." *Hodson*, 543 F.3d at 293–94 (emphasis added); *see, e.g., United States v. Edwards*, 813 F.3d 953, 968 (10th Cir. 2015) (Fourth Amendment rights "cannot be vitiated by fallacious inferences drawn from the facts not supported by the affidavit."); *People of the Virgin Islands v. John*, 654 F.3d 412, 420 (3d Cir. 2011) ("Even police officers who lack legal training are expected to know of the requirement that the *factual basis* for a probable cause determination must be stated in the affidavit."); *United States v. Needham*, 718 F.3d 1190, 1195 (9th Cir. 2013) (holding bare inferences alone do not establish probable cause); *see also United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990) ("[I]f the government presents expert opinion about the behavior of a particular class of persons, for the opinion to have any relevance, the affidavit must lay a foundation which shows that the person subject to the search is a member of the class.").

The only *factual support* to link this defendant with "characteristics common to [such] people," as defined in the warrant, is that Walling demonstrated a sexual attraction to minors. No other independent factual evidence suggests he distributed, received, or collected child pornography.[3] That is not sufficient.

---

[3] Moreover, the officer does not actually assert "that individuals who engage in child [solicitation] are likely also to possess child pornography," *see Hodson*, 543 F.3d at 289, nor does he provide any support for this empirical assertion. He may have come close to doing so by concluding "[t]here is probable cause to believe that a person using the Internet at 822 Grindle Drive . . . is a collector of child pornography *based on* the number of requests made to a presumably 14 year old minor child for photographs, as well as having

## 2.    *Walling's prior convictions.*

Unlike the facts in *Hodson,* Walling had prior convictions for criminal sexual conduct and possession of child sexually abusive materials. This fact weighs in favor of the United States, but the affiant did not assert Walling's history supported probable cause. That history was merely included in a background section. In any event, if Walling's criminal history along with a demonstrated sexual interest in children sufficed for probable cause to search for evidence of child pornography, any sex offender would be subject to a search of his home at any time even if not on parole. That is not the law. *Cf. Hodson,* 543 F.3d at 293.

In sum, these minor distinguishing factors do not sufficiently separate the facts in this case from those in *Hodson.* As the Court affirmed there: "Standing alone, [even] a high incidence of child molestation by persons convicted of child pornography crimes may not demonstrate that a child molester is likely to possess child pornography." *Hodson,* 543 F.3d at 293. Likewise with coercion and enticement. The fact that Walling had a demonstrated sexual interest in children—the sole characteristic that matched the cited characteristics common to those who collect child pornography—was not sufficient. Accordingly, the information contained in the "four corners of the affidavit" does not support that the magistrate judge had a substantial basis to conclude probable cause existed to search for evidence of *child pornography* under the totality of the circumstances.

---

graphically sexual conversation with an investigator working under the cover of the aforementioned 14 year old child." (ECF No. 21-1 at PageID.146 (emphasis added).) But again, to "support" that conclusion, he merely offers "characteristics common to people involved in Internet child pornography"—and almost none of those characteristics tie to Walling. Further, the officer did not say, "based upon my experience, people who solicit minors for sex collect child pornography." Rather, he said, "based upon my experience, there are certain characteristics common to individuals involved with . . . child pornography," but those listed characteristics do not include "having graphically sexual conversations with minors" or "requesting [fully-clothed] photographs."

## B.    Severance

### a.    *Using the Sixth Circuit's approach, severing the infirm portions of the warrant validates the search and renders suppression of the cell phone and statements inappropriate.*

Had the application for the search warrant and affidavit thereto omitted all statements regarding child pornography, the officers clearly would have had independent probable cause for child coercion and transmission of obscene materials to minors.

The issue for the Court, then, is this: What's the appropriate approach when a warrant "established probable cause for [two] crime[s] (child [coercion and transmission of obscene materials to minors]) but [partially] designed and requested a search for evidence of an entirely different crime (child pornography)"? *Hodson*, 543 F.3d at 292.

Under long-established doctrine, courts may simply "sever the infirm portion of the search warrant from the remainder which passes constitutional muster." *United States v. Blakeney*, 942 F.2d 1001, 1021 (6th Cir. 1991).

Usually severance doctrine applies to the scope of the search for evidence of one crime, or the "particularity" requirement, *see, e.g., United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001) (severing one "catch-all" clause" from the warrant for lack of particularity but nonetheless concluding "severance of the 'catch-all' clause does not change the scope of the district court's denial of the motion to suppress"); but the doctrine no less logically applies where probable cause exists to search for evidence of one crime but does not exist for another crime where the latter crime would justify a search broader in scope. *See United States v. George*, 975 F.2d 72, 79 (2d Cir. 1992) ("When a warrant is severed (or redacted) the constitutionally inform portion—usually for lack of particularity *or probable cause*—is

11

separated from the remainder and evidence seized pursuant to that portion is suppressed; evidence seized under the valid portion may be admitted." (emphasis added)); *cf. Galpin*, 720 F.3d at 448 (employing severance analysis for the only specified crime even though probable cause was lacking for other general crimes that lacked sufficient specificity).

Since the scope of a search for child pornography exceeds that for the other crimes listed in the warrant, the Court believes that severance is required.

"[I]nfirmity due to overbreadth does not doom the entire warrant; rather, 'it requires the suppression of evidence seized pursuant to that part of the warrant . . ., but does not require the suppression of anything described in the valid portions of the warrant . . . .'" *Greene*, 250 F.3d at 477 (quoting *United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir. 1993)). That is, the courts must simply "sever the infirm portion[s] of the search warrant," *Blakeney*, 942 F.2d at 1021, and determine the sufficiency of the remaining portions.

After redacting all terms referencing child pornography, as the United States' Exhibit 2 demonstrates (ECF No. 25-1), the warrant and evidence seized survive the standard severance test adopted by the Sixth Circuit. *See Blakeney*, 942 F.2d at 1027; *accord. Greene*, 250 F.3d at 477.

Because the only tangible evidence obtained in this case was Defendant's cell phone, and a "valid[] portion of the warrant" encompasses the cell phone, suppression of the cell phone, along with Walling's voluntary statements to law enforcement during their otherwise lawful presence at Walling's home, is not required. *See id.* After severance, Paragraph 10 in the affidavit survives and specifically encompasses the cell phone (*see* ECF No. 25-1 at PageID.191); in addition, Section II in Attachment B of the search warrant itself incorporates

12

the cell phone by reference—"*[s]uch items* will be searched and seized and seized to locate property, evidence, fruits, and instrumentalities of 18 U.S.C. §§ 2422(b) (coercion and enticement of a minor) and 1470 (transfer of obscene material to minors)." (ECF No. 21-1 at PageID.159 (emphasis added).)

Alternatively, even if the specific reference to a cell phone was stricken because of its placement in an affidavit attachment otherwise primarily devoted to child pornography (*see* ECF No. 21-1 at PageID.156), other case law supports the view that Walling's cell phone was lawfully seized because a search may be valid even when an itemized list of evidence is not included from the outset—and by logical extension, after severance.

In *Wheeler v. City of Lansing*, the Sixth Circuit held that "'evidence not described in a search warrant may be seized if it is reasonably related to the offense which formed the basis for the search warrant,' which shows that specification of the underlying offense is the key limit on the scope of the search, not a speculative or boilerplate list." *United States v. Raglin*, 663 F. App'x 409, 413 (6th Cir. 2016) (quoting *Wheeler v. City of Lansing*, 660 F.3d 931, 939 (6th Cir. 2011)).

In *United States v. Dickerson*, the Fourth Circuit held that a warrant that authorized a search for "evidence of the crime of bank robbery," with no itemized list, was sufficiently particular because bank robbery tends to generate the same sort of "distinctive evidence" every time it is committed, even though the officer who applied for the warrant had detailed information about the items used in the robbery. 166 F.3d 667, 693–94 (4th Cir. 1999), *overruled on other grounds*, 530 U.S. 428 (2000); *accord. United States v. Raglin*, 663 F. App'x 409, 413 (6th Cir. 2016); *cf. George*, 975 F.2d at 76 (noting that warrants are

sometimes sufficient even though they only authorize "the seizure of 'evidence,' 'instrumentalities' or generic classes of items").

That case law applies here, as well. So long as probable cause existed to search for evidence of child coercion, enticement, and transmission of obscene materials to minors, as the Court has found here, it makes little sense to suppress the cell phone because after severance, the specific item "cell phone" is left out. Evidence for child coercion, enticement, and transmission of obscene materials arguably "often generate[] the same distinctive evidence from case to case." *Raglin*, 663 F. App'x at 412–13 ("But in a run-of-the-mine case like Raglin's, where the police have generic, but clear, information about the suspect's trafficking activity, it's difficult to see the difference between a warrant that seeks 'evidence related to the illegal use/s[ale]/transfer of illegal narcotics' and a warrant that seeks 'evidence of narcotics trafficking, including drugs, cash, weapons, scales, and other drug-trafficking paraphernalia.'").

Even after excising Paragraph 10 from the affidavit, the warrant itself in Attachment B still authorized a search and seizure for "property, evidence, fruits, and instrumentalities of 18 U.S.C. §§ 2422(b) (coercion and enticement of a minor) and 1470 (transfer of obscene material to minors) by Justin Walling." (ECF No. 21-1 at PageID.159.) That statement, which was made in "Section II"—separate from "Section I" pertaining to child pornography— suffices to make this warrant more particularized than an impermissible general warrant. *See United States v. Christie*, 717 F.3d 1156, 1164–66 (10th Cir. 2013) ("[W]arrants may pass the particularity test if they limit their scope . . . to evidence of specific federal crimes."); *accord. Raglin*, 663 F. App'x at 413.

### b. The Court declines to adopt the Tenth Circuit's expansion of ordinary severance doctrine.

Defendant urges the Court to adopt the Tenth Circuit's test, which was expanded in *United States v. Sells*, 463 F.3d 1148 (10th Cir. 2006). At least one other circuit has adopted that framework. *See United States v. Galpin*, 720 F.3d 436, 448–49 (2d Cir. 2013) ("[S]everance is not an available remedy for an overbroad warrant 'where no part of the warrant is sufficiently particularized, where no portion of the warrant may be meaningfully severed, or where the sufficiently particularized portions make up only an insignificant or tangential part of the warrant.") ("[T]he court must be able to excise from the warrant those clauses that fail the particularity or probable cause requirements in a manner that leaves behind a coherent, constitutionally compliant redacted warrant."). The *Sells* test essentially looks to whether the valid portions of the warrant make up the "greater part of the warrant" and whether "[a] warrant's invalid portions, though numerically fewer than the valid portions, may be so broad and invasive that they contaminate the whole warrant." *Sells*, 463 F.3d at 1155–61; *accord. Galpin*, 720 F.3d at 445–46.

The Sixth Circuit, however, has not adopted that more vigorous—or unsound, depending on a jurist's perspective, *see Cassady v. Goering*, 567 F.3d 628, 656 (10th Cir. 2009) (McConnell, J., dissenting) (explaining the "shortcomings of our existing approach")— severance framework for analyzing this type of case.

Indeed, the majority of other circuits appear to reject the Tenth Circuit's "greater-part of-the-warrant" exception to ordinary severance doctrine. *See id.* at 650 (McConnell, J., dissenting) (observing that "[t]he majority of our fellow circuits simply ask whether the valid

portions of a warrant constitute an 'insignificant or tangential part of the warrant.'"); *see also id.* at 657 ("When the valid parts  of the warrant are distinguishable and not insignificant, these interests are better promoted by severing the warrant—even when they do not constitute 'the greater part of the warrant.'").

The effect of applying the framework in *Sells* is often to reject a warrant in its entirety, rather than apply the doctrine of severance to save it. In so doing, the *Sells* framework—contentions to the contrary—appears to intimately involve the type of "line-by-line scrutiny," *Gates*, 462 U.S. at 245 n.14, disfavored by the Supreme Court. *Compare Sells*, 720 F.3d at 1151 ("We apply a multiple-step analysis to determine whether severability is applicable: First, we divide the warrant in a commonsense, practical manner into individual clauses, portions, paragraphs, or categories. We then evaluate the constitutionality of each individual part to determine whether some portion of the warrant satisfies the probable cause and particularity requirements of the Fourth Amendment. . . .") *with Gates*, 462 U.S. at 288–89 (quoting *United States v. Ventresca*, 380 U.S. 102, 108–09 (1965)) (("[C]ourts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner.").[4]

The Court will admit that a warrant like the one here may not survive in the Tenth Circuit, as the invalid child pornography portions arguably make up "the greater part of the warrant," and even if not, those portions are arguably "so broad and invasive that they contaminate the whole warrant." *See Sells*, 463 F.3d at 1155–61. Indeed, the entire section

---

[4] The Court submits that the *Sells* approach does not analyze the warrant "in a commonsense, practical manner." *See id.*

detailing "specifics of seizing and searching computer systems" only relates to the "collection and distribution of child pornography." (*See* ECF No. 21-1 at PageID.148.)[5]

But that line of case law is not binding here, and until the Sixth Circuit adopts such a framework beyond applying the straightforward approach in *Blakeney* and *Greene*, this Court declines to be the first in the Sixth Circuit to follow the *Sells* approach.

Rather, the Court agrees with Judge McConnell's assessment that "[w]hen the valid parts of the warrant are distinguishable and not insignificant," like portions of the warrant in this case, "the[ interests served by the Fourth Amendment] are better promoted by severing the warrant—even [if] they do not constitute 'the greater part of the warrant.'" *Cassady*, 567 F.3d at 657 (McConnell, J., dissenting).

In his dissent in *Cassady*, Judge McConnell faults *Sells* and its progeny from expanding the more straightforward rule in *Brown*, 984 F.2d at 1078. *See Cassady*, 567 F.3d at 649 (McConnell, J., dissenting). The Sixth Circuit has never indicated its willingness to follow the more expansive approach announced in *Sells*, and indeed has relied on *Brown* itself. *See Greene*, 250 F.3d at 477 (quoting *United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir. 1993)).

---

[5] The affidavit also states that "<u>all</u>" "devices" that "might contain evidence listed in Attachment B" may need to be "previewed" "*because* investigators do not know the devices JUSTIN WALLING used to," for example, "create, save, access, or hide *child pornography*" or "communicate with others *about child pornography*." (*Id.* at PageID.152.) The affidavit further says that "retention of any computers" would only be warranted "*if any child pornography is found thereon.*" (*Id.* at PageID.153.) But for the statement in a scantily-drafted "Section II" that "such items" will also be "searched and seized to locate property, evidence, fruits, and instrumentalities of 18 U.S.C. § 2422(b) (coercion and enticement of a minor) and 1470 (transfer of obscene material to minors)," none of the affidavit discussing what it is to be searched has any written relation, in the four corners of the affidavit, to coercion or enticement or transmission of obscene materials. Ultimately, though, given the Court's reading of relevant Sixth Circuit case law, the warrant is not fatally defective as a constitutional matter after severance.

## C.    Good Faith

Even if the warrant with redaction was irredeemable, the Court would hold the good-faith exception applied.

Once "the warrant issues, there is literally nothing more than the policeman can do in seeking to comply with the law." *Leon*, 468 U.S. at 921. Indeed, the standard is "[w]hether an objectively reasonable officer would have recognized that the affidavit was so lacking in indicia of probable cause as to preclude good faith reliance on the warrant's issuance." *Laughton*, 409 F.3d at 751–52.

In *Needham*, the Ninth Circuit held that although the search warrant was impermissibly "predicated on the bare inference that those who molest children are likely to possess child pornography," the good-faith exception applied. 718 F.3d at 1195–96. The fact that officers sought evidence for another crime, child molestation, in addition to child pornography, was unquestionably a factor supporting the application of the good-faith exception. *See id.* at 1202 (Tallman, J., concurring).

By contrast, in *Hodson*, the Sixth Circuit stated that an objective, reasonably trained officer "would have realized that the search described (for evidence of the crime of child pornography) did not match the probable cause described (that evidence would be found of a different crime, child molestation) and therefore the search was illegal, despite the magistrate's decision to the contrary." *Id.* at 293. Moreover, the same officer who requested the search warrant executed it. *See id.* (citing *Groh v. Ramirez*, 540 U.S. 551, 564 (2004)). Accordingly, the Sixth Circuit confirmed that the good-faith exception could not apply.

In this case—consistent with *Needham* and in contrast to *Hodson*—the affidavit sought to seize evidence of other crimes (coercion and enticement and transmission of obscene materials) in addition to child pornography. Unlike the facts in *Hodson*, 543 F.3d at 293—where no other crime listed besides child pornography formed the basis of the search—there were other crimes being investigated and listed in the affidavit with Walling in this case. *Compare id. with Needham*, 718 F.3d at 1202 (Tallman, J., concurring). This may have also been why the Magistrate Judge signed the warrant and overlooked the lack of independent basis for child pornography. Thus, at a bare minimum, after redaction, what remains from the warrant clearly suffices to sustain the good faith exception. *Cf. George*, 975 F.2d at 80 ("In determining whether the doctrine applies in the case of a redacted warrant the trial court therefore must ask if, when the officers came upon the item found in plain view, they were in a place where the *redacted* warrant—or a provision of the original warrant as to which the good faith exception applies—authorized them to be.").

## D.    Fruits of the Search

Because the Court has found that the warrant was supported by sufficient probable cause after severance and alternatively the good-faith exception would save the search, the officers were unquestionably lawfully at Walling's residence. Walling's argument to suppress his incriminatory statements solely relies on the fruit-of-the-poisonous-tree doctrine[6] rather

---

[6] "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, *Weeks v. United States.*, 232 U.S. 383 (1914), but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.' *Nardone v. United States*, 308 U.S. 338, 341 (1939). It 'extends as well to the indirect as the direct products' of unconstitutional conduct. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)." *Segura v. United States*, 468 U.S. 796, 804 (1984). The Supreme Court has held that "verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the mere common tangible fruits of the unwarranted intrusion. Nor do the policies underlying the exclusionary rule invite any

than other grounds, such as voluntariness. Accordingly, Walling's voluntary statements and

the fruits from those statements are unquestionably admissible.

## ORDER

For the reasons stated in the accompanying Opinion, the Court hereby **DENIES**

Defendant Justin Walling's motion to suppress. (ECF No. 16.)

**IT IS SO ORDERED.**

Date:   April 10, 2017              /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    United States District Judge

---

logical distinction between physical and verbal evidence. Either in terms of deterring lawless conduct by federal officers, *Rea v. United States*, 350 U.S. 214 (1956), or of closing the doors of the federal courts to any use of evidence unconstitutionally obtained, *Elkins v. United States*, 364 U.S. 206 (1960), the danger in relaxing the exclusionary rules in the case of verbal evidence would seem too great to warrant introducing such a distinction." *Wong Sun*, 371 U.S. at 485.